J. F. LARRABEE v. A. R. BALDWIN, FRANK JOHNSON, R. J. VANDEWATER, DAVID MEEKER, JOHN McHUGH, J. C. WINANS, J. M. MORRISON, N. A. WATSON, HENRY CRITCHER, JOHN E. KINCAID, HENRY ADLER, S. LUBECK, GEO. F. PARKER, CHARLES E. BLAKE, JOSEPH A. DONOHOE, AND W. C. RALSTON.

DEBTS OF CORPORATIONS.—While the Constitution requires the debts of corporations to be secured by the personal liability of the corporators, and makes each stockholder liable for his proportion of such debts, it leaves to the Legislature

the power to regulate such liability, and to prescribe the rule by which each stockholder's proportion of such debts shall be ascertained.

IDEM.—An Act of the Legislature making each stockholder of a corporation liable for his share of all its debts contracted while he is a stockholder is sufficient to answer the requirements of the Constitution.

IDEM.—There is nothing in the Constitution that renders a man who becomes a stockholder personally liable by so doing for his proportion of all the uncanceled debts of the corporation created before he became a stockholder.

PROOF TO FIX LIABILITY OF STOCKHOLDER.—In an action against the stockholders of a corporation to recover the proportional share of each one of the corporate debts, the proof must show that the defendant was a stockholder when such debt was contracted. Proof of a judgment against the corporation does not show when the debt was contracted.

JUDGMENT AGAINST CORPORATION.—A judgment rendered against a corporation, while a party is a stockholder, upon a contract entered into before the relation of stockholder existed, is not a contract within the meaning of the Act which makes such stockholder liable for the corporate debts contracted while he was such stockholder.

ACTION TO RECOVER CORPORATE DEBTS.—A joint or several action may be brought against stockholders of a corporation for corporate debts.

HOW LIABILITY OF STOCKHOLDERS MAY BE DISCHARGED.—Each stockholder of a corporation formed under the Act of 1853, entitled "An Act to provide for the formation of corporations for certain purposes," is liable for his proportion of the corporate debts ; and any one creditor, whose debt is sufficient, may collect of him the entire amount of his liability on all the corporate debts, leaving him to seek contribution out of his co-stockholders. When such stockholder has paid to any one or more creditors the amount of his entire liability, his liability ceases.

IDEM.—To determine how much any one stockholder of such corporation is liable to pay to a corporate creditor, it is necessary to find the whole amount of the indebtedness of the corporation created while he was a stockholder; and any one creditor, whose demand is large enough, may have judgment for the stockholder's proportion of all such corporate debts.

CERTIFICATES OF INCORPORATION.—Defects in certificates of incorporation are cured by the Act of April 1st, 1864.

JUDGMENTS AS EVIDENCE.—The point, whether judgments against a corporation are admissible in evidence without putting in the entire judgment roll, not decided.

ACT OF 1850, CONCERNING CORPORATIONS.—The Act of 1850 concerning corporations, has no application to corporations formed under the Act of 1853, for "Manufacturing, mining, mechanical, or chemical purposes, or for the purpose of engaging in any species of trade or commerce." The Act of 1853 repealed the Act of 1850 so far as these classes of corporations are concerned.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The Pond Gold and Siver Mining Company was a corporation organized in this State, under the Act of 1853, " to

provide for the formation of corporations for certain purposes," for the purpose of carrying on the business of mining at Aurora, in the State of Nevada. The capital stock of the company was six hundred thousand dollars, divided into twelve hundred shares of five hundred dollars each.

The cause was tried by the Court, a jury having been waived. The Court found:

"That on the 5th day of December, 1864, one Samuel Youngs recovered a judgment against the said "The Pond Gold and Silver Mining Company," in the District Court of the Ninth Judicial District of the State of Nevada, within and for the County of Esmeralda, for the sum of seven thousand eight hundred and thirty-five dollars damages, and one hundred and eighteen dollars and eighty-five cents costs, being in all the sum of seven thousand nine hundred and fifty-three dollars and eighty-five cents.

"That the said judgment, before the commencement of this action, was by the said Samuel Youngs duly assigned to the plaintiff herein, for a valuable consideration, and that the same has not been reversed, modified, or set aside, and has not been paid, or any part thereof. That the said judgment is entitled to bear interest at the rate of ten per cent per annum, from the day of its rendition, to wit: from the 5th day of December, 1864.

"That said Pond Gold and Silver Mining Company is indebted in the sum of fifty-seven thousand six hundred dollars, and is now insolvent.

"That defendants were stockholders when such indebtedness was incurred.

"That during the time the liability in which this action is founded was contracted and incurred by said company, the defendants were stockholders therein, and owned and held shares of the stock of said company as follows, to wit:

"A. R. Baldwin, thirty shares; Frank Johnson, twenty shares; R. J. Vandewater, ten shares; David Meeker, fifteen

shares; John McHugh, forty-one shares; J. C. Winans, twenty shares; J. M. Morrison, fifteen shares; N. A. Watson, ten shares; Henry Critcher, ten shares; John E. Kincaid, eleven shares; Henry Adler, ten shares; S. Lubeck, eight shares; George F. Parker, five shares; Charles E. Blake, five shares; Joseph A. Donohoe and W. C. Ralston, (Donohoe, Ralston & Co.,) thirty shares.

"That defendants Donohoe & Ralston have paid on the debts of said company the sum of nine hundred and eight dollars and fifty-five cents."

The Court rendered the following judgment:

"It is ordered, adjudged, and decreed, that the plaintiff have and recover the sum of nine thousand three hundred and forty-five dollars and seventy-seven cents, found due, principal and interest, with two hundred and four dollars and fifty cents costs, making the full sum of nine thousand five hundred and fifty dollars and twenty-seven cents, and that he have judgment against the defendants severally for the respective sums for which they have been found liable as aforesaid, to wit: that he have judgment against A. R. Baldwin for the sum of one thousand four hundred and forty dollars; against Frank Johnson, for the sum of four hundred and twenty-seven dollars; against R. J. Vandewater, for the sum of four hundred and eighty dollars; against David Meeker, for the sum of seven hundred and twenty dollars; against John McHugh, for the sum of one thousand nine hundred and sixty-eight dollars; against J. C. Winans, for the sum of nine hundred and sixty dollars; against J. M. Morrison, for the sum of seven hundred and twenty dollars; against N. A. Watson, for the sum of four hundred and eighty dollars; against Henry Critcher, for the sum of four hundred and eighty dollars; against Henry Adler, for the sum of four hundred and eighty dollars; against S. Lubeck, for the sum of three hundred and eighty-four dollars; against G. F. Parker, for the sum of two hundred

and forty dollars; against C. E. Blake, for the sum of two hundred and forty dollars; against Joseph A. Donohoe and William C. Ralston, (Donohoe, Ralston & Co.,) for the sum of five hundred and thirty-one dollars and forty-five cents."

During the progress of the trial the plaintiff offered in evidence the certificate of incorporation of the Pond Gold and Silver Mining Company. The defendants objected on the grounds that it was not properly acknowledged or proved, and that it did not appear that a copy had been filed in the Secretary of State's office. The Court overruled the objection. The particular ground of objection to the certificate was, that there were five trustees named in the body of it, while it was signed and acknowledged by three only of the five.

The plaintiff offered in evidence an exemplified copy of a judgment rendered in favor of Samuel Youngs against the Pond Gold and Silver Mining Company, in the District Court of the Ninth Judicial District in and for Esmeralda County, State of Nevada, at the December term, 1864. This copy did not contain the summons or pleadings, but it recited the filing of a demurrer to the complaint, the overruling of the same, and the entry of the judgment by default.

The defendants objected to the copy, because it did not contain the entire judgment roll. The Court overruled the objection.

The complaint averred that the above judgment was recovered for work and labor performed by various persons for the Pond Company, between the 15th of September and 15th of December, 1863, and that these persons had assigned the same to the plaintiff. The pleadings were not under oath, and the answer denied this allegation. Plaintiff offered no evidence except the judgment to show the contracting of the debt by the corporation.

The Court gave judgment against defendants severally for their *pro rata* share of the total indebtedness—fifty-seven

thousand six hundred dollars—and not of the Youngs judgment alone. The defendants appealed.

The other facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp,* and *Clarke & Carpentier,* for Appellants.

If there was any liability in this case, it was only for the claim to which plaintiff had succeeded as assignee; and yet the Court awards judgment against each of the appellants, not for their respective proportions of the Youngs judgment, which would be nearly eight dollars per share, but charges them with their proportion of the total indebtedness—fifty-seven thousand dollars. Upon this point we deem further argument unnecessary.

The plaintiff, in order to recover against either of the defendants, was bound to prove that the debt upon which he sued was contracted during the time that such defendant was a stockholder. The language of the statute is:

"Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company, contracted or incurred *during the time that he was a stockholder.*" (Stats. 1853, p. 90, Sec. 16; also, p. 92, Sec. 27.)

Section sixteen was amended in 1863, but by the amendment the liabilities of stockholders was not enlarged.

The plaintiff in this case sues on a judgment recovered in 1864, against a corporation.

Without doubt any and if necessary all the property of the corporation may be taken in satisfaction of the judgment, without any regard to the time when the indebtedness, which forms the basis of the judgment, was incurred. But the stockholder's relation to this judgment is very different. Such interest as he has in the property of the corporation is unconditionally liable, but his individual property is not liable to be taken in execution under such judgment,

and under the peculiar form of our statute, only conditionally liable in an independent suit brought against him on the original indebtedness.

We do not perceive that a judgment against a mining corporation can properly figure at all in a proceeding to establish the personal liability of the stockholders, under section sixteen, above quoted.

The impropriety of basing a proceeding against individual stockholders upon a judgment against a corporation is clearly illustrated by the case at bar. Here are some fifteen individuals sued upon a judgment rendered against a company that was incorporated on the 9th February, 1863. They became stockholders at different times—one as early as March 4th, 1863, another as late as August 31st. A judgment was rendered against the corporation for seven thousand eight hundred and thirty-five dollars and costs, December 5th, A. D. 1864, which gives no clue whatever to the *time when* or the *cause for which* the indebtedness was incurred. For aught that appears, the indebtedness may have been for services rendered for the company before any of the defendants became stockholders, or while only a few of them were such.

Suppose that two thirds of the indebtedness accrued before August 31st, 1863; then defendant John McHugh would only be liable for his proportion of one third of the indebtedness, to wit: that which had accrued after he became a stockholder.

The plaintiff seems to have fallen into the error of supposing that the liability of the corporation arose only upon the rendition of the judgment, and that all who were stockholders at that date were individually liable. This, perhaps, has arisen from confounding the liability of stockholders under section sixteen of the Act authorizing mining corporations, with the liability of stockholders under section thirty-two of the general Act respecting corporations, passed April 11th, 1850.

The liability of stockholders under our general Act respecting corporations are similar to those prescribed by the statutes of New York, with this exception: that in New York the stockholder is not liable until after judgment has been recovered against the corporation, and the decision of the Courts of that State (6 Abbott's Prac. 385) hold that the stockholders are all liable, whether they were or not stockholders when the debt was contracted.

A careful examination of section sixteen readily shows that such decisions are not applicable to our statute respecting mining corporations. By the terms of that section, the stockholder is a debtor (to the extent of his proportional interest) only as to all indebtedness *incurred during the time he is a stockholder,* and is liable to be sued only on such indebtedness. The corporation and stockholders are not made *jointly* liable, but each are independently liable, and in a suit against them, the stockholders have a right to make as full and complete a defense as the corporation itself has. No suffering of default or confession of judgment by the corporation can prejudice their defense.

*Walter Van Dyke,* for Respondent.

The appellants contend that the evidence fails to show the defendants were stockholders when the indebtedness was contracted or incurred.

They cite the sixteenth section of the Act under which the Pond Company was organized, which provides that each stockholder shall be liable for his proportion of all the debts of the company contracted or incurred " during the time that he was a stockholder."

The Constitution, in fixing the liability of a stockholder, contains no such limitation, but declares that each stockholder " shall be individually and personally liable for his proportion of all its debts and liabilities;" and if it were necessary, as it is not in this case, I should contend that the limitation of personal liability in the Act beyond that con-

tained in the Constitution is clearly void. The language of the Constitution is plain and unambiguous, and every one of ordinary understanding can comprehend it; it requires no construction. The proportion of debts and liabilities of a stockholder is just as easily understood as his dividend or proportion of receipts. It requires no exercise of legal or other learning to arrive at the meaning of such plain terms. One who owns one tenth of the stock of a company owns one tenth of its property, and is entitled to one tenth of the profits or dividends; and the Constitution designed that he should be liable for one tenth of its debts. But I contend, although it may be immaterial in this case, that the liability here was incurred by the company when the judgment was rendered against it. The Constitution and statute both use the term "liabilities," as well as "debts." If the corporation, by its officers, within the line of its business, should execute a bond or make a promissory note, there can be no question that a liability would thereby be incurred by the company; and a stockholder, at that date, would be liable individually on the same. A judgment is a contract in the highest sense, and as an obligation possesses a force superior even to that of a specialty or simple contract; and further, it is said, "the debt secured by it differs in no manner from a simple contract debt, though the evidence of the existence of the debt is of a higher and more solemn character than that by which a simple contract debt is proven." (*Reed* v. *Eldridge*, 27 Cal. 348.)

Suppose a corporation has a capital stock of one hundred thousand dollars, divided into one hundred shares of one thousand dollars each, and the shares are owned by ten stockholders, who own ten shares each. The debts and liabilities of the company amount to ten thousand dollars, being one hundred dollars on each share, or a thousand dollars liability to the individual stockholder. A creditor of the corporation holds a demand of a thousand dollars, the amount for which each of the stockholders is individually and severally liable. Can he recover his claim from one of

them—he being liable, as seen, for the amount—or is he compelled to sue the whole ten, and recover only a hundred dollars from each?

Unless the law requires the latter course, a creditor should not be asked to pursue it, for clearly there is no reason in its favor. It does not concern the stockholder whether he pays the amount for which he is liable to one creditor or twenty. His personal liability is measured by the Constitution, and if he discharges it by paying the full amount for which he is held to one creditor, or a hundred, it is all the same. He is only required to pay his proportion of *all* the debts once, and from this there is no escape.

This action is founded upon the foregoing theory regarding the liability of the defendants as stockholders of the Pond Company; and it is respectfully submitted, that the Act to provide for the formation of corporations, of the class to which this company belongs, fully supports it—in fact, admits of no other construction. Section sixteen of "An Act to provide for the formation of corporations for certain purposes," passed April 17th, 1853, as amended in 1863, reads as follows:

"Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company contracted or incurred during the time that he was a stockholder, for the recovery of which joint or several actions may be instituted and prosecuted. In any such actions, whether joint or several, it shall be competent for the defendant, or defendants, or any or either of them, on the trial of the same, to offer evidence of the payment by him, or them, or any or either of them, of any debts or liabilities of such corporations; and, upon proof of such payment, the same shall be taken into account, and credited to the party or parties making such payment; and judgment shall not be rendered against the party or parties defendant, proving such payment, for a sum exceeding the amount of his or their proportion of the debts and liabilities of such

incorporations, after deducting therefrom the sums proven to have been paid by him, them, or any or either of them, on account thereof."

The last clause removes all chance for doubt or question in regard to the meaning of the section, if any could otherwise exist.

Appellants' counsel, not the respondent's, seem to have confounded the section under consideration with the thirty-second section of the Act concerning corporations in general. By that, judgment is rendered against the stockholder, in an action by a creditor of the company, for his proportion only of the debt which is the subject of the suit, and by paying such proportion he is "released and discharged from any further individual or personal liability for *such* debt."

The two are palpably different, and proceed on altogether different theories.

By the Act applicable in this case, in an action against a stockholder, a recovery can be had to the extent of his proportion of all the debts of the company if the creditor's demand should equal such proportion, or he may voluntarily pay any one creditor the whole amount for which he is liable on the company's debts, and thereafter he is discharged from all further liability by simply proving such payment. Under the Act concerning corporations in general, the creditor can only recover from a stockholder his proportion of such creditor's demand, and the stockholder is not discharged from liability till he pays his proportion of each separate debt against the company. In the former, and which governs in this case, you may exhaust the personal liability of the stockholder in one suit, and the creditor is required to include in his action such number of stockholders only whose aggregate individual and personal liability for the debts of the company is sufficient to satisfy his demand, as the plaintiff in this case has done.

By the Court, SAWYER, C. J.:

Action against stockholders of the Pond Gold and Silver Mining Company, to recover against them *personally* a debt due from the corporation. Section sixteen of the Act authorizing the formation of mining corporations provides, that "each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company contracted or incurred during the time that he was a stockholder, for the recovery of which joint or several actions may be instituted and prosecuted." We have no doubt of the power of the Legislature, under sections thirty-two and thirty-six of Article IV of the Constitution, to adopt this limitation. The former is in these words: "Dues from corporations shall be secured by such individual liability of the corporators, and other means as may be prescribed by law." And the latter reads as follows: "Each stockholder of a corporation or joint stock association shall be individually and personally liable for his proportion of all its debts and liabilities." It was manifestly contemplated that the Legislature should regulate the liability, and prescribe the rule by which each stockholder's proportion should be ascertained. (*French* v. *Teschemaker*, 24 Cal. 539.) The principle adopted by the Legislature makes every stockholder liable for his share of all debts contracted while he is a stockholder. The entire body of stockholders, for the time being, is personally liable for the entire debt contracted—an entire set of stockholders is liable for every debt. This is sufficient to answer all the requirements of the Constitution. There is nothing in the provision that requires each man, when he becomes a stockholder, to do so on the penalty of becoming responsible for all prior liabilities of the corporation that remain uncanceled. This would be to make several different sets of stockholders personally responsible for some debts, and only one set for others. There is nothing in the Constitution requiring such a result.

There is nothing whatever in the testimony tending to

show when the indebtedness sued on was contracted, and, consequently, nothing to show whether it was contracted while the several defendants were stockholders or not. It is true, a page of the minute book of the company, which was incorporated February 9th, 1863, was read, to show that it "commenced business in July, 1863," and "that the company did no business after July, 1864—had no property, and was doing nothing." From this it must have been inferred by the Court that the debts were contracted some time between the 1st of July, 1863, and the last of July, 1864. If such inference was admissible from this evidence, it would not help the matter. The evidence also shows, that the several parties held different amounts of stock at different times, and consequently that their proportions varied at different times. For instance, the Court finds that Baldwin held thirty shares when the indebtedness was contracted. But the evidence shows that he had ten shares on the 4th of March, 1863; April 17th, 1863, seventeen shares; September 5th, five shares more. According to the testimony, he could at no time have had thirty shares before the 5th of September. Yet the indebtedness may in part or wholly have been contracted before the latter date. Frank Johnson was found to have held twenty shares. The testimony shows that on April 17th, he had fifteen shares, and on July 24th, five shares more, making twenty. Admitting that the debt must have been contracted while the company was doing business, at what time was it incurred?—before or after the 24th of July? There is not a shadow of testimony tending to show, yet the extent of Johnson's liability is materially affected by this important fact. Winans is found to have twenty shares, yet the testimony does not tend to show that he had any prior to the 7th of August. Lubeck, Meeker, Donohoe, Ralston & Co., and McHugh do not appear by the evidence to have had any stock till the 10th of August, 5th of September, 22d of August, and 31st of August, respectively, yet they are found to have had, respectively, eight, fifteen, thirty and forty-one shares, when such indebtedness

was contracted. If we are required to infer that the entire indebtedness must have been contracted while the company was doing business, it may still all have been contracted in the month of July, 1863; and it does not appear that these latter named parties are personally liable at all, for, so far as the evidence shows, they were not stockholders in the month of July. The fact is, there is nothing in the record which tends, in any degree, to show when the indebtedness was contracted; and the appellant is right in maintaining that the findings on this point are unsupported by the evidence, and that the judgment against the corporation goes for nothing, without other evidence to show when the debts upon which the recovery was had were contracted. In this respect there was a fatal error.

The claim of the respondent that the judgment is itself a contract creating a new debt, within the meaning of the statute, for which all who were stockholders at the date of the rendition of the judgment are personally liable, is too absurd to require argument to refute it. That a judgment is a contract of record, in a certain legal sense, may be conceded, but it creates no such new liability as the statute in question contemplates. The judgment only merges and puts in a new form, against the will of both corporation and stockholders, an indebtedness which has already been contracted. If this is to be construed as the creation of a new liability, there would be no way for a stockholder to escape personal responsibility for all debts which had before been incurred; and the limitation provided for by section sixteen of the Act concerning corporations for mining companies would be utterly nugatory.

We do not understand that the judgment in favor of plaintiff is for more than was due. In order to find out how much any one stockholder is liable to pay to the plaintiff of the amount due from the corporation, it is necessary to find the whole amount of the indebtedness of the corporation created while he is a stockholder. If his share of personal liability, upon the whole indebtedness, is sufficient

to pay the judgment of the plaintiff, we know of nothing to prevent the plaintiff from collecting the whole out of him, leaving the stockholder, who has paid more than his share of the particular debt, to seek contribution out of his co-stockholders. This is the reasonable construction of section sixteen. Of course when the judgment is once satisfied, the plaintiff can collect no more from the other stockholders, although his judgment may, before satisfaction, have authorized him to collect it out of several stockholders. This, if we understand it, disposes of appellant's third point.

The statute authorizes a joint action or several actions.

It is not clear that any fatal defect exists in the certificate of incorporation. If so, it is cured by the Act of April 1st, 1864. (Laws 1864, p. 303.)

On the point as to whether the judgments against the corporation were admissible in evidence, without putting in the entire judgment roll, each party appears to be equally confident, yet neither takes the trouble to cite any authority upon the precise point, and, as the case is decided upon another ground, we shall not perform the duties of counsel in investigating the question for them. If the question is raised again, we hope counsel will be prepared with the authorities to maintain their views.

Judgment and order denying new trial reversed, and new trial granted.

[The above opinion was delivered while Mr. Justice SHAFTER and Mr. Justice CURREY were members of the Court. Neither Mr. Justice RHODES nor Mr. Justice SANDERSON expressed any opinion. A rehearing having been granted, the following opinion was delivered after Mr. Justice SPRAGUE and Mr. Justice CROCKETT had become Justices. Mr. Justice SANDERSON and Mr. Justice SPRAGUE concur in the opinion of the Chief Justice.]

By the Court, SAWYER, C. J.:

We granted a rehearing upon the point as to whether, under section sixteen of the Act of 1853, for the formation of mining and certain other corporations, as amended in 1863, a creditor, in his recovery against an individual stockholder on his personal liability, is limited to the stockholder's share of that particular debt, or whether he can recover the whole amount of his debt against such stockholder, provided the entire amount for which the stockholder is personally responsible upon the aggregate of the corporate debts, is sufficient to pay the debt in suit.

Upon a careful re-examination of the question by the light of the arguments in the several petitions for rehearing, and further briefs, we are unable to find any ground of escape from the conclusion before attained. We can put no other construction upon the provisions of section sixteen, which, to our minds, appears reasonable. The whole section is as follows: "Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company contracted or incurred during the time that he was a stockholder, for the recovery of which joint and several actions may be instituted and prosecuted. In *any* such action, whether joint or several, it shall be competent for the defendant or defendants, or any or either of them, on the trial of the same, to offer evidence of the payment by him, or them, or any or either of them, of any debts or liabilities of such corporations, and upon proof of such payment, the same shall be taken into account and credited to the party or parties making such payment, and judgment shall not be rendered against the party or parties, defendant, proving such payment for a sum exceeding the amount of his or their proportion of the debts and liabilities of such incorporations, after deducting therefrom the sums proven to have been paid by him, them, or any or either of them, on account thereof." (Laws 1863, p. 736.)

It would be no strained construction to so hold upon the

first clause of the section down to the first period, if there had been nothing more. But, in that case the construction might be open to some doubt, whether it was contemplated that each creditor should be compelled to pursue each stockholder for his individual share of his debt, or whether he might make his money out of the first one he could find, whose liability is sufficient to cover the indebtedness, and where he could make it easiest. If there is any one, who, in a legal point of view could be injured by the latter construction, it would be other creditors, and not the stockholder. In contemplation of law, each stockholder ought to pay, and will pay, the whole amount of his liability to some party, and it is not of the slightest moment to him, to whom he pays it, for, when fully paid, he is discharged. The only benefit a stockholder could derive from the other view would be, the probability, or possibility, that owing to the expense and impracticability of pursuing each stockholder for his fraction of liability upon each debt, large and small, he might escape altogether a large portion of the liability for which he engages himself as a member of the corporation— a species of benefit at the expense of honest creditors, which the law in no way recognizes, or countenances. That the Legislature did not contemplate that each stockholder should be the debtor of each creditor for a share of his whole liability, corresponding to the creditor's share of the whole debts of the corporation, and no more, or that one creditor, by his diligence, should get no advantage over another, in case of the insolvency of the corporation and a portion of the stockholders, seems plain to our minds from the remainder of the section. It provides, that "in such action, whether joint or several," against a stockholder or stockholders to enforce the personal liability, "it shall be competent to show on the trial payment by him, or them, or any or either of them, of *any* debts or liabilities of such corporation, and upon proof of such payment the same shall be taken into account and credited to the party or parties making such payment, and judgment shall not be rendered against the

party or parties defendant proving such payment for a sum exceeding the amount of his or their proportion of the debts and liabilities of such incorporations, after deducting therefrom the sums proven to have been paid by him, or them, or any or either of them on account thereof." This shows no intention to protect one creditor against the superior diligence of another, or to divide up the liability of the stockholder, giving a part to each creditor, but indicates a contrary purpose. It authorizes the payment of the whole liability to the first who comes with a demand sufficient to absorb it, and, by implication, at least, authorizes the creditor to make his money out of any party liable to pay the amount. It is not designed to give an option to the stockholder to prefer whom he will, for the law recognizes no personal favors as due to stockholders as such, but it is designed to *protect* them, when they *have paid* the full amount of their liability to a party duly entitled, whether he has collected it *with* or *without* suit. Besides, the latter clause provides, that, " the judgment shall not be rendered against the party or parties defendant proving such payment for a sum *exceeding* the amount of his or their proportions of the debts and liabilities," etc., and the provision that judgment " in *any such action,* whether joint or several," shall not be entered " *exceeding* the amount," etc., upon well settled rules of construction, implies that it may be entered " *in any such action,*" *up to* " the amount of his or their proportion of the debts and liabilities of such corporations." The evident policy of the law with respect to creditors, in this, as in our Attachment Law, is, to give the preference to the vigilant rather than to the sleeping, in strict accordance with the time-hallowed maxim : *vigilantibus, et non dormientibus, servat lex.* And the party liable can, in contemplation of law, have no interest in the question as to which particular creditor shall receive the amount of his liability. He can have no legal concern beyond protection after his liability is discharged, and can, in no legal sense, be injured by payment to one, rather than to another.

It is said, however, that section thirty-two of the general Act of 1850, concerning corporations, as also amended in 1863, must be read in connection with said section sixteen, under consideration; that the two sections must be so construed as to harmonize; and as the provisions of said section thirty-two are specific, and clearly limit the recovery of each creditor to a portion of the whole liability of each stockholder, corresponding to his share of the whole debts due from the corporation, section sixteen must bear the same construction, or the two sections will not be in harmony, or if this view is not correct, that, then, we should look to those provisions upon a similar, or cognate subject matter, to ascertain what the Legislature probably intended by the less specific provisions of section sixteen, adopted on the same day. This argument, if we correctly apprehend the matter, proceeds upon a mistaken view, as to the applicability of said section thirty-two, of the Act of 1850, to the subject matter of this suit, and as to the relation to each other of the two Acts of 1850 and 1853. As we read these Acts, section thirty-two of the one, and sixteen of the other, apply to wholly different subjects matter; while the argument drawn from a comparison of the two sections appears to us to support the construction maintained in this opinion, rather than the other.

The two Acts of 1850 and 1853, are two distinct and wholly independent Acts, each embracing a separate and distinct, not the same, subject matter. They both relate to corporations, but not to the same corporations. The Act of 1850, it is true, originally covered the whole field of corporations. It was divided into several chapters, each chapter providing for certain classes of corporations. The first chapter contained certain general provisions, applicable to all created under that Act, and said section thirty-two is found in said chapter. Chapter V of that Act provided for corporations for manufacturing, mining, mechanical or chemical purposes. (Stat. 1850, pp. 347, 365.) But in 1853 a *new* Act, " to provide for the formation of corporations for certain purposes," which included manufacturing, mining,

mechanical or chemical purposes, or for the purpose of engaging in any species of trade or commerce, foreign or domestic, was passed; and Chapter V of the Act concerning corporations of 1850, was *repealed,* so that, thenceforth, the Act of 1850 had no application to corporations to be formed for these purposes. The old Act was *not amended,* but *absolutely repealed,* so far as these classes of corporations, thereafter to be formed, are concerned, and a new and independent Act, covering the whole subject matter of such corporations adopted. (Stat. 1853, p. 87, Secs. 1, 25, 27.) As to the corporations formed under this new Act, it is provided in express terms, "such corporations, and the members thereof, being subject to all the conditions and liabilities herein imposed, *and none others."* (*Ib.* Sec. 1.) Again, "corporations formed under this Act, and the members thereof, shall not be subject to the conditions and liabilities contained in an Act entitled 'An Act concerning corporations,' passed April 22d, 1850." (*Ib.* p. 92, Sec. 27.) Thus by express enactment neither section thirty-two nor any other of the provisions, general or special, of the Act of 1850, either as it before stood, or as amended in 1863, has any connection with or application to corporations, like the one now in question, formed under the Act of 1853, which Act is complete within itself. Its construction, therefore, cannot affect the question at issue.

Section sixteen of the latter Act is the only one touching the question, and the decision of the point now under consideration must depend alone upon the construction given to said section. As the two sections, then, are in different Acts, and have no application to the same subject matter, there is no occasion to give a construction that shall harmonize the two, for each can have a full and complete operation upon its own subject matter, however different the provisions, and their construction may be.

Section sixteen of the Act of 1853, and section thirty-two of the Act of 1850, were both amended by two several Acts, passed on the same day, April 27th, 1863, but neither amend-

ment was made applicable to any class of corporations, except those provided for in the particular Act to which it was an amendment.  Section sixteen of the Act of 1853, as thus amended, has already been given.  Section thirty-two of the Act of 1850, as amended on that day, reads as follows:

"Each stockholder of any corporation shall be severally, individually, and personally liable for such proportion of all its debts and liabilities as the amount of stock owned by him in such corporation bears to the whole of the capital stock of the corporation, for the recovery of which joint and several actions may be instituted and prosecuted; and in any such action against any of the stockholders of a corporation, the Court shall ascertain and determine the *proportion of the debt which is the subject of the suit* for which each of the stockholders who are defendants in the action are severally liable, and judgment shall be given severally in conformity therewith.  If any stockholder in a corporation shall pay his proportion *of any debt* due by such corporation he shall be released and discharged from any further individual or personal liability *for such debt.*"

It will be seen by comparison that those two sections are wholly different; that they could not be made to apply to the same subject matter, and could not possibly be intended to accomplish the same object.  Both provide for prosecuting joint or several suits to enforce the liability, but section thirty-two provides that in any such action against any of the stockholders "the Court shall ascertain and determine the proportion of the debt which is the subject of the suit, for which each of the stockholders who are defendants in the action are severally liable, and judgment shall be given severally in conformity therewith."  This provision expressly contemplates that each creditor shall recover a portion of the whole personal liability of the stockholder, corresponding to the portion of the whole indebtedness held by him, and no more, and directs the Court to ascertain the proportion of

the "debt which is the subject of the suit," each is severally liable for, and enter a several judgment in conformity therewith. There is no allowance for payment to other creditors. Section sixteen contains no provision of the kind, but, on the contrary, contains a provision authorizing the defendant or defendants "in any such action, whether joint or several," to show that they have paid their full share of personal liability, or some part of it, to other creditors, and directs the amount so paid to be allowed to the party paying. Said section thirty-two provides that if any stockholder "shall pay his proportion of any debt, he shall be released and discharged from any further individual or personal liability for such debt." He is not to be discharged from paying his proportion of other debts, although he may pay the whole of some particular debt. Under section sixteen it is quite different, for in a suit upon one debt, he may show that he has paid the whole, or a part, of his liability to *some other creditor or creditors*, and "judgment shall not be rendered against him for a sum exceeding the amount of his or their proportion of the debts and liabilities, * * * *after deducting therefrom the sums proven to have been paid*," etc. Thus the two sections, as to the rights of the creditors as against the individual stockholders, go upon different theories. One is based upon the theory that each creditor shall be entitled to hold each stockholder personally liable to himself for a portion of each stockholder's entire liability, corresponding with the amount of the share of the whole debt due from the corporation held by such creditor; and the other upon the theory that the vigilant creditor may reap the reward of his vigilance, by obtaining his money from any party whose liability is sufficient to cover his demand. It cannot be supposed that this difference is accidental, or that the Legislature, by adopting provisions so entirely diverse, intended to express the same idea, or confer the same rights. These two Acts were before the Legislature at the same time, and were passed on the same day. That body had no difficulty in finding language to express its intention clearly

in section thirty-two; and, if it had in contemplation a similar result in passing the amendment to section sixteen, it is reasonable to suppose it would have adopted similar language. When in two laws under consideration and passed at the same time, theories so diverse have been adopted, it must be presumed that it was with a design, and that the specific design in each section is in harmony with its own general theory. Why the Legislature applied a different rule to these different classes of corporations, they have not seen fit to inform us. Whether the policy is a wise one, or not, is no concern of ours. It is enough for us to know, if such be the fact, and so we think it to be, that thus the law is written.

Under the view here taken, each section is consistent with itself in the general theory upon which it proceeds, and in the provisions general and specific for giving it effect; while under the other view, section sixteen would be inconsistent with itself in these respects. We are unable to give any other construction, which appears to us reasonable, to the statute in question, than that before adopted.

Whichever view prevails, the result on this appeal is not changed, for the judgment must be reversed on other grounds. But the question is directly presented in the record, and it will necessarily arise on the next trial. For this reason, and as it has been fully argued, we deem it proper to determine it now.

. The judgment and order denying a new trial are reversed, and a new trial granted, and the remittitur directed to issue forthwith.

RHODES, J., concurring:

· The solution of the questions upon which the rehearing was granted, depends, in my judgment, upon the construction of section sixteen, and not of section thirty-two.

The first clause of section sixteen declares the liability of stockholders. " Each stockholder shall be individually and

personally liable for his proportion of *all* the debts and liabilities of the company contracted or incurred during the time that he was a stockholder." The remainder of the section relates to the mode of procedure in ascertaining and determining the amount of the debts for which each stockholder is liable. Joint and several actions may be instituted. The stockholder may prove, and there shall be allowed to him, in reduction of the amount for which he would otherwise be liable, in a suit brought by a creditor, the amount which he may have paid upon "any debt or liability of such corporation," and, thereupon, judgment shall be given for a sum not exceeding his "proportion of the debts and liabilities of such corporation," less the amount previously paid by him. That is to say, each stockholder is liable for his proportion of *all* the debts and liabilities of the corporation, and for nothing beyond; and upon his payment of such proportion, his liability ceases. Suppose the debts of the corporation amount to one hundred thousand dollars, and that there are one hundred stockholders, each holding the same amount of stock. When one stockholder has paid a creditor one thousand dollars he is no longer liable to the other creditors. Under that section he is clearly authorized to exhaust his whole liability in the satisfaction of the debt of one creditor, and the other creditors must look to the corporation and the other stockholders for the payment of their demands. This construction, it is true, may enable the diligent creditor to secure the payment of his demand from the only solvent stockholder in the company, and leave the other creditors without remedy, except against the corporation, which may, perhaps, be insolvent. This result certainly would ensue should the only solvent stockholder exhaust his liability for his proportion of all the debts of the corporation in the payment, without suit, of the claims of one or more of the creditors. This results, not from construction, but from the positive terms of the Act.

Should the opposite construction be given, consequences more injurious to the creditors and more absurd in their

results would ensue. The solvent stockholder in the supposed corporation pays ten dollars on *any debt or liability* of the corporation; and in each of the suits brought by creditors whose claims do not severally exceed one thousand dollars, he relieves himself from responsibility by proving his *one* payment of ten dollars. Had the stockholder paid one hundred dollars he would not be liable to any creditor whose claim did not exceed ten thousand dollars.


CROCKETT, J., dissenting :

I dissent from the opinion of my associates on the important question involved in this case. The order granting a rehearing confined the argument of counsel to the questions relating to the liability of the defendants as stockholders in a mining corporation, under section sixteen of the Act concerning mining corporations, as amended in 1863. (Stats. 1863, p. 736.)

The question to be considered is one of great practical importance in this State, and is accurately stated in brief of defendant's counsel, as follows:

"Can a creditor of a mining corporation recover from any individual shareholder the proportion due from the latter of the aggregate debts and liabilities of the corporation, or so much thereof as will satisfy the creditor's debt? or is the recovery to be limited to the proportionate share of the debt sued for due from the stockholder?"

The solution of this question will depend upon the proper construction of section thirty-two of the general Incorporation Act as amended in 1863, (Stats. 1863, p. 766,) and the sixteenth section of the Act concerning mining corporations, as amended in 1863. (Stats. 1863, p. 736.) Both these amendments were passed and took effect on the same day, and must be construed together, so as to harmonize their

provisions if practicable. Section thirty-two is in the following words:

"Each stockholder of any corporation shall be severally, individually, and personally liable for such proportion of all its debts and liabilities as the amount of stock owned by him in such corporation bears to the whole of the capital stock of the corporation, for the recovery of which, joint or several actions may be instituted and prosecuted; and in any such action against any of the stockholders of a corporation, the Court shall ascertain and determine the proportion of the debt which is the subject of the suit for which each of the stockholders who are defendants in the action are severally liable, and judgment shall be given severally in conformity therewith. If any stockholder in a corporation shall pay his proportion of any debt due by such corporation, he shall be released and discharged from any further individual or personal liability for such debt."

Section sixteen is as follows: "Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company contracted or incurred during the time that he was a stockholder, for the recovery of which joint or several actions may be instituted and prosecuted. In any such actions, whether joint or several, it shall be competent for the defendant or defendants, or any or either of them, on the trial of the same, to offer evidence of the payment by him, or them, or any or either of them, of any debts or liabilities of such corporations, and upon proof of such payment, the same shall be taken into account and credited to the party or parties making such payment, and judgment shall not be rendered against the party or parties defendant proving such payment for a sum exceeding the amount of his or their proportion of the debts and liabilities of such incorporation after deducting therefrom the sums proven to have been paid by him, them, or any or either of them, on account thereof."

If the question rested for its solution on section thirty-two alone, it would present but little difficulty. That section requires the Court to "ascertain and determine the proportion of the debt, which is the subject of the suit for which each of the stockholders, who are defendants in the action, are severally liable, and judgment should be given severally in conformity therewith." It follows, as a necessary implication from this language, that each stockholder shall be liable only for his proportion " of the debt, which is the subject of the suit," and not for the whole debt. The remainder of the section renders it still more clear : " If any stockholder in a corporation shall pay his *proportion* of any debt due by such corporation, he shall be released and discharged from any further individual or personal liability for such debt." It is plain from these provisions that each stockholder is liable only for his *proportion* of each debt, and not for the whole debt.

It will be borne in mind that this section is a part of the general Act, applicable to all corporations, except mining and other corporations organized under the Act of 1853; whereas, section sixteen, already quoted, is a portion of the Act relating especially to mining and certain other specified corporations. It is insisted by counsel that the Legislature, in enacting the sixteenth section, intended to establish a system of liability in respect to stockholders in these particular corporations different from that which applies to stockholders in corporations generally ; and that the liability of a stockholder in a mining corporation is to be governed exclusively by that section. Whilst there is much force in this suggestion, it is a well established rule in construing statutes that the Court will look into cotemporaneous legislation on the same or kindred subjects, in order the better to comprehend the meaning of doubtful clauses in the particular statute under discussion. But if the question we are considering be tested by the sixteenth section alone, it is by no means free from doubt. This section manifestly authorizes a stockholder in a mining corporation to elect to which

of the creditors of the corporation he will pay the whole or any part of the amount of his proportion of the aggregate corporate debts. It expressly provides that on the trial, "upon the proof of such payment, the same shall be taken into account and credited to the party or parties making such payment, and judgment shall not be rendered against the party or parties defendant proving such payment for a sum exceeding his or their proportion of the debts and liabilities of such incorporation, after deducting therefrom the sums proven to have been paid by him, them, or any or either of them, on account thereof."

The majority of the Court holds that the right which this section confers upon the stockholder, to elect to which of the creditors he will pay the whole or any part of his proportion of the aggregate debt of the corporation, necessarily implies that each creditor has a correlative right to collect his entire debt from any one of the stockholders whose proportion of liability for the entire debts of the corporation is equal to the sum due to that particular creditor. If the creditor has this right, it is only by implication, for it is not expressly given; and inasmuch as it is a right which does not appertain to creditors of corporations generally, it is for those who maintain the proposition to establish that in this particular class of corporations the creditor has a different and more plenary remedy against the stockholder than is provided for creditors of corporations generally. I do not perceive that there is any necessary or even reasonable connection between the two propositions, or that one is the correlate of the other. For reasons satisfactory to the Legislature, it has seen fit to authorize a stockholder of mining or certain other specified corporations to elect to which one of the creditors he will pay his proportion of the corporate indebtedness. It is not for us to attempt to explain or justify the motives or policy which led to this enactment. It is enough for our purpose that "*ita est scripta lex.*"

It does not follow, however, as a logical or reasonable sequence, in the absence of any provision to that effect, that

a creditor may, by compulsory process, appropriate the whole, or as much as is necessary, of the entire liability of a stockholder for the aggregate corporate debts to the payment of his own debt, to the exclusion of other creditors. The sixteenth section does not admit of such an interpretation. To so construe it would lead to perplexing and embarrassing results. The creditor who obtained the first judgment might appropriate to his own debt the entire liability of the only solvent stockholders, to the exclusion of all other creditors; and creditors whose demands were not due would be wholly powerless, whilst other creditors were appropriating the entire proceeds of the liabilities of the only solvent stockholders. This appears to me to be a perversion of the whole theory of our legislation on this subject, and is a proposition which ought not to be established by the Courts by mere implication, nor without an explicit declaration of the legislative will to that effect.

The general policy of our legislation on this subject, has been to secure to each creditor of the corporation his proportionate part of whatever was due from each stockholder on account of his liability for the entire corporate indebtedness. The sixteenth section, it is true, departs from this policy, in so far as it *permits* a stockholder to pay to any one or more creditors the whole or any part of the sum due from such stockholders; but this is a personal privilege accorded to the stockholder, for reasons satisfactory to the Legislature, and with which we have no concern. I am unwilling, however, by mere implication to establish the proposition that any creditor, by compulsory process, may compel the application to his own debt of the entire sum due from one or more stockholders, on account of the corporate indebtedness, whilst there are other debts of the corporation unpaid. I am unable to perceive any valid reason for such a discrimination in favor of mining, and a few other specific corporations; and in the absence of legislation to that effect, it should not be established by mere implication.

In my opinion, the judgment should be reversed.