THOMAS PRINCE, Appellant, *v.* FRANCIS LYNCH, Respondent.

Practice.—After trial by the Court, when it has filed its findings and rendered judgment, it is irregular for it, upon motion of one of the parties, to re-examine the evidence and reverse its former action, or substitute different findings of facts.

Idem.—The only regular way for the Court to review its former action is on a motion for a new trial.

Release of a Stockholder in a Corporation.—Where a creditor of a corporation, by an instrument under seal, releases a stockholder from all personal liability for his debt, he thereby discharges the corporation, and other stockholders to the same extent as the one to whom the release is executed.

Idem.—If the release be for the releasee's *proportion* of the indebtedness of the corporation, the company and the other stockholders are only released *pro tanto.*

Payment by a Member of a Corporation.—Such release will be sufficient to support the plea of payment made by a stockholder in an action against him for his proportion of the debts of the corporation, under the sixteenth section of the Act concerning corporations, as amended by Act of 1863. (Statutes of Cal. for 1863, p. 736.)

*Per* Crockett, J., dissenting:

Practice.—If the Court, through inadvertence, or a misconception of the testimony, finds contrary to the evidence, I can perceive no valid reason why it may not, at any time during the term and before entry of the judgment, receive the suggestions of counsel as to the alleged errors, and correct them on its own motion.

Property Primarily Liable for the Debts of a Corporation.—As between the corporation and its stockholders, the corporate property is the fund primarily liable for the corporate debts.

Relation between a Corporation and its Stockholders as to the Debts of the Corporation.—As between themselves, the corporation is the principal debtor, and the stockholders are sureties or guarantors.

Idem.—Release of a Stockholder.—Though both the corporation and the stockholders are primarily liable to creditors, yet, as between themselves, the one being the principal debtor, and the others only its sureties, a release of the corporation will release the stockholders, but a release of the latter will not discharge the former.

Appeal from the District Court of the Fourth District, City and County of San Francisco.

In addition to the facts stated in the opinion of the Court, the following statement contains all that is material for a full apprehension of the points decided.

The defendant, a member of a mining corporation, was sued for his proportion of the debts of the company by a creditor thereof. For a defense and counter-claim, he alleged in his answer that the company for whose debts he was sued was, on the 27th of April, 1867, indebted to one McClelland,

in the sum of $416; and likewise to one Atkinson, in the sum of $207. That, at said date, the said McClelland and the said Atkinson released and discharged him by releases under seal, from his proportion of the debts of the corporation, to the extent of their claims against the mining company.

There was judgment for the defendant in the District Court, and the plaintiff appealed.

*F. P. Dann,* Attorney for Appellant, submitted the following points and authorities :

*First*—The action of the Court in setting aside the original findings of facts, and substituting others, is not allowable under the Civil Practice Act of this State. (*Cowing* v. *Rogers,* 34 Cal. Rep. 648; *Rice* v. *Inskeep,* 34 *Id.* 224; *Miller* v. *Steen,* 30 *Id.* 408; *Hidden* v. *Jordan,* 28 *Id.* 304, 305.)

*Second*—The Court below erred in admitting any evidence of indebtedness from the corporation to McClelland and Atkinson, respectively. (*Wells* v. *McPike,* 21 Cal. Rep. 218; Cal. Stats. 1863, Sec. 16, p. 736.)

*Third*—There was error in admitting the releases in evidence, made by McClelland and Atkinson, respectively, to the defendant; because the statute authorizes only "*payment*" as a defense, and in the answer there is no allegation of payment of any portion of the company's debts (see Statutes, as above); and because those instruments were *res inter alia acta.* (Best Principles of Evidence, 50 Law Library N. S. p. 120 Sec. 102; p. 378, Sec. 339.)

*Fourth*—The liability of a stockholder for the debts of a corporation is *several* and not *joint;* and a release of one of the stockholders from all claims and demands by a creditor does not discharge the others. (*Bank of Poughkeepsie* v. *Ibbolson,* 24 Wend. 473; *Id.* 5 Hill, 461; 1 Parsons on Con. pp. 26–29; 2 *Id.* 220–222.)

*Fifth*—This Court can, upon the original findings of facts, reverse the judgment of the Court below, and render such judgment as that Court should have rendered upon the facts

found.  (*James* v. *Williams*, 31 Cal. Rep. 211; *Sears* v. *Dixon*, 33 *Id.* 326; Practice Act, Sec. 345; *Gahon* v. *Neville*, 2 *Id.* 81; *Bidleman* v. *Kewen*, 2 *Id.* 248; *Bagley* v. *Eaton*, 10 *Id.* 149.)

*N. B. Mulville*, for Respondent, insisted :

That the instruments from McClelland and Atkinson fully sustained one of the defenses set up in the answer. (Secs. 16 and 32 of Act of 1863; *Larrabee* v. *Baldwin*, Oct. T. 1868.)

SAWYER, C. J., delivered the opinion of the Court :

This cause was tried by the Court, without a jury, on the 24th of October, 1868; and on the 7th of November following, the Court filed its findings in writing, stating the facts found and conclusions of law separately, as required by the Practice Act, and concluding with a direction to enter judgment for the defendant in pursuance of the findings. The plaintiff having given the defendant notice on the 10th of November of the filing of said findings, on the 14th of November the defendant gave plaintiff notice that he excepted to the findings on the ground that they were not in accordance with the evidence introduced, and served therewith other and different findings, which he claimed to be in accordance with the evidence, and a notice that on the 21st of November he would move the Court to substitute the findings so served for those on file. On hearing the motion, the Court made the substitution, with some slight modification, to all of which the plaintiff excepted, and he now relies on this action of the Court as one of the grounds for reversing the judgment and order denying a new trial. The change, however, was in some minor particulars, and the conclusion of law and judgment are the same as they were upon the finding first filed.

We know of no provision of the Practice Act authorizing the Court to re-examine the evidence upon the motion of one of the parties, after it has once filed its findings and rendered judgment, and on such re-examination to reverse its former action and substitute different findings of fact. Under the Act of 1861, and Section 180 of the Practice Act, as amended

in 1866, the Court is authorized to supply omissions and defects. We have often stated the object and scope of these provisions. (*Hidden* v. *Jordan*, 28 Cal. 304–5; *Miller* v. *Steen*, 30 Cal. 408; *Cowing* v. *Rogers*, 34 Cal. 648; *Rice* v. *Inskeep*, *Id.* 224.) But these provisions do not authorize a re-examination of the evidence for the purpose of correcting former errors, and changing the finding of facts. The mode provided for reviewing its former action by the same Court, as to the sufficiency of the evidence to justify the finding, is by motion for new trial. On the motion for new trial, when the Judge is of opinion that the damages are excessive under the evidence, he may require a portion to be remitted, as a condition of denying a new trial, and in this way, if submitted to, correct the error. Perhaps there may be other errors, which could readily be corrected in this way. But if there is an error of fact affecting the judgment, which cannot be obviated in this mode, we know of but one *regular* way to correct it, and that is by motion for new trial. (*Carpentier* v. *Gardiner*, 29 Cal. 163. See, also, *Calderwood* v. *Pyser*, 31 Cal. 337.)

If the Judge should discover a clerical mistake in his findings, or that he had inadvertently committed an error, and should correct it at the same term, before the entry of judgment, while the proceeding is still *in fieri*, and in such a manner that the party against whom the correction is made shall not thereafter lose an opportunity to move for a new trial, or have the time within which to move in any way abridged, or lose any other right thereby, we, doubtless, should not grant a new trial on that ground. But the practice of entertaining a motion to review the action of the Court in the mode pursued in this instance, if adopted, would be liable to abuse. It is nowhere recognized by the Practice Act, and ought not to be encouraged. A much better practice would be to submit the finding for the suggestions of the attorneys of the respective party, before signing and filing. (*Tewksbury* v. *Magraff*, 33 Cal. 237, 255.)

A release under seal of one of several joint, or joint and several debtors or obligors, is a release as to all. (*Armstrong* v. *Hayward*, 6 Cal. 185–6; *Rowley* v. *Stoddard*, 7 John. 210;

*Cheatham* v. *Ward*, 1 Bos. & Pul. 633; *Nicholson* v. *Revill*, 4
Ad. & El. 683; *American Bank* v. *Doolittle*, 14 Pick. 126;
*Tuckerman* v. *Newhall*, 17 Mass. 583; *Goodnow* v. *Smith*, 18
Pick. 415.) A release extinguishes the obligation. (*McCrca*
v. *Purmort*, 16 Wend. 474.)

Both defendant, Lynch, to the extent of his personal lia-
bility as a stockholder of the corporation, and the corporation,
the Gobernadora Silver Mining Company, were jointly and
severally liable to McClelland and Atkinson for their respec-
tive debts due from the corporation to them. If not jointly
liable in the strict sense of that term, as has been suggested,
the legal incidents, as between the corporation and stockhold-
ers, to the extent of their personal liability, are, it seems to
us, precisely the same. The stockholder is not a surety in any
sense of the term. He is under the Constitution and the stat-
ute primarily liable in the same sense as the corporation is
primarily liable. The same identical act which casts the
liability on the corporation, also casts it on the stockholder.
There are not separate contracts. The stockholder does not
stand in the position of an endorser or guarantor. An
endorser or guarantor is not liable on the same contract.
His contract is a separate and distinct one of his own, to
which the principal is no party. It is founded upon the
principal contract, and finds its consideration only in that
contract; but it is a separate and distinct contract, neverthe-
less, and the terms are different. Each is liable on his own
particular contract, but there is no joint contract or joint
obligation. The maker and endorser or guarantor of a note
may be sued jointly, it is true, but this does not result from
the fact that there is a single joint contract.

It is suggested that the reason the release of one joint
obligor discharges the other, is, that if either pays the debt
the other is liable to contribution, which would be defeated
by the release if it were permitted to exonerate only the
party to whom it is made. On this ground it is said to be
held to extinguish the debt. Now this incident attends the
relation in question, and this principle is as applicable to it
as to the case of two joint makers of a note.

Suppose the corporation is sued and a recovery had: the

stockholder released must contribute his share, for the corporation can levy an assessment on all the stockholders, according to their respective shares, to raise funds to pay the judgment. The corporation must pay it, unless it, too, is discharged, and the other shareholders are entitled to have him contribute his share. Or, suppose the corporation is in funds, and pays without an assessment, it takes from the stockholder released his *pro rata* share of a fund which would otherwise go to him in dividends, and thus he is made to contribute notwithstanding his release. So suppose McClelland had sued other stockholders of the corporation and recovered and collected from them the whole amount of his debt: the stockholder, or stockholders, so compelled to pay, would have a claim for contribution against Lynch for his share, and thus either the right to contribution of the shareholder who has been compelled to pay, or the release to Lynch, must be defeated. Suppose, again, that McClelland should discharge all the stockholders from personal liability, as has been suggested, and the corporation itself should still remain liable, each stockholder would still be liable to contribute his *pro rata* share, either in the form of an assessment levied by the corporation to pay the debt, or by a diminution of dividends, and the release would be defeated, or the corporation deprived of power to protect its property. One of two results must inevitably be reached. Either the debt is extinguished as to all by the release, or the release is wholly inoperative as to all. Thus the incidents and consequences are the same as between joint debtors and joint obligors in any other form. We think, therefore, that the case is within the rule, and that a valid release, under seal, discharges the corporation and other stockholders, as well as the stockholder released. The releases to the defendant, Lynch, referred to in the findings, were in due form and under seal, and, we think, to the extent of the amount released, discharged the coporation as well as Lynch. But we think the Court erred in holding that the whole $416 66, due McClelland, was released. The language of the release is: "I hereby release and discharge said Francis Lynch from *his proportion* of said company's said indebted-

ness *to me*." The release, by its express terms, then, is only
"from his *proportion* of said company's said indebtedness
to me"—not from the *whole*, "and this shall be said Lynch's
receipt in full, to date, for *his proportion and share of all
indebtedness to me by said company*, and a bar to any and all
suits against said Lynch for *the same;*" that is to say, for
"*his proportion and share*." It is manifest that McClelland
did not intend to release his whole demand, but only Lynch's
share. Although Lynch might be liable under the Act to
pay McClelland the whole demand against the company, as
held in *Larrabee* v. *Baldwin* (35 Cal. 155), if the amount of
the aggregate debts of the corporation upon which he was
personally responsible was sufficient; yet the *whole* would
not be *his share* of the indebtedness, because he would be
entitled to recover the excess paid by him over his share
from the corporation, and to call upon his co-stockholders,
who were also personally liable, to contribute. The fact
that he might be liable personally, under the statute, in the
first instance, to pay the whole to the creditor, does not
increase or diminish, or in any way affect the amount of *his
share* of the demand. His share of the $416 66 is that sum
which bears the same ratio to $4,418 that the amount of the
capital stock held by defendant bears to the whole capital
stock, and that is the sum released.

We think, however, that the Court was right in regarding
the amount thus released as a payment by the defendant of
other liabilities of the corporation with which he is entitled
to be credited under Section 16 of the Act under which the
corporation was organized. The release was to defendant,
and it operated as a satisfaction of so much of the indebted-
ness of the corporation procured by defendant. It is quite
manifest that McClelland intended that defendant, not the
corporation, should have the benefit of the release. If he
chose to make a gift of this sum to the defendant, he had
a right to do so; and, upon the gift being made, the amount
became the property of defendant, and not of the corpora-
tion or other creditors of the corporation, and operated as a
satisfaction by defendant. Defendant stands precisely in the
same position as he would if McClelland had made him a

present of so much money, and he had immediately paid the amount back to McClelland in satisfaction of an equal amount of the indebtedness of the company upon which defendant was personally liable. Not to allow the amount released to defendant as a payment by him of so much indebtedness of the company, would be to take from defendant that which McClelland had given him for his own personal benefit, and give it to the corporation, or to other creditors of the corporation. We think, therefore, that the amount released by McClelland and Atkinson should be credited to defendant as a payment, and deducted from that portion of the corporate debts for which he is personally liable, and that judgment should not be rendered against him for an amount exceeding the balance of the portion of the corporate debts for which he is personally liable remaining after such deduction.

We do not see that there is any necessity for a new trial. The only issue upon the pleadings, is, as to the amount of the indebtedness of the corporation upon which defendant is personally liable. Upon this point both findings substantially agree as to the facts upon which the question is to be determined. The rest is mere matter of calculation, when the legal principles arising upon the facts are settled. Upon the pleadings, and both findings, the amount of the debts of the corporation, for a portion of which defendant is liable, on the 26th of April, 1867, was $4,418; and the amount to be credited as a payment on the debts of the corporation is the share of the defendant of the debt of $416 66 to McClelland, and $207 to Atkinson, released. The proportions and interest are mere matters of calculation.

The judgment is reversed and the District Court directed to compute the amount and enter judgment upon the pleadings and undisputed findings, in pursuance of the principles stated in this opinion.

By RHODES, J.: I dissent.

CROCKETT, J., also filed the following dissenting opinion:

After the findings were filed in this case, the defendant, on notice to the plaintiff, moved the Court to set them aside

and to substitute a series of findings submitted by the defendant. The motion was granted, and the plaintiff excepted. It is well settled in this Court that where the findings are contrary to or unsupported by the evidence, the only proper proceeding to correct them is a motion for a new trial, and not an exception to the findings. (*Hidden* v. *Jordan* 28 Cal. 304; *Miller* v. *Steen*, 30 Cal. 408; *Cowing* v. *Rogers*, 34 Cal. 648; *Rice* v. *Inskeep*, *Id.* 224.) Nevertheless, if the Court, through inadvertence or a misconception of the testimony, finds contrary to the evidence, I can perceive no valid reason why it may not, at any time during the term and before the entry of judgment, receive the suggestions of counsel as to the alleged errors, and correct them on its own motion; and if either party is not satisfied with the findings as corrected, the remedy is by motion for a new trial. In this method, errors proceeding from inadvertence or an evident misapprehension of the testimony, may be corrected without prejudice to the right of either party to move for a new trial, the necessity for which may in this way frequently be obviated. It is but due to the Court and to the speedy administration of justice, without unnecessary circuity, that the Court should have the opportunity thus promptly to correct its own errors, so that its final action may be the result of its deliberate correction, and not of mere inadvertence and misapprehension.

In this case, there is no substantial difference between the two series of findings on any material point, and it is not perceived that the plaintiff has been prejudiced by the action of the Court in this respect.

The releases from McClelland and Atkinson to the defendant, were evidently intended by the parties as a release only of his individual liability as a stockholder for the debts due from the corporation to these creditors. They purport on their face, only to release him from "his proportion" of the company's indebtedness to them, and these instruments cannot be construed as a transfer to the defendant of the indebtedness of the corporation to McClelland and Atkinson.

But the important question in the case is, whether the releases from McClelland and Atkinson to the defendant, of

his proportion of the debt due from the corporation to them, operated in law to discharge the corporation, *pro tanto,* from its indebtedness.  If such was the legal effect of the releases, the defendant claims that to that extent he has cancelled the indebtedness of the corporation to two of its creditors, and is entitled, under Section 16 of the Act under which the corporation was organized, to have that sum deducted from the amount for which he would otherwise have been liable as a stockholder, to other creditors.  The question is one of great practical importance, not only to stockholders in corporations, but to the creditors.  It should be speedily and definitely settled whether, if a creditor of a corporation release one of the stockholders from his individual liability for the debt, he thereby discharges the corporation and the other stockholders.

In general, the release under seal of one joint, or joint and several debtors, will discharge the whole. (*Armstrong* v. *Hayward,* 6 Cal. 185; *Rowley* v. *Stoddard,* 7 John. 210; *Cheatham* v. *Ward,* 1 Bos. & Pul. 633; *American Bank* v. *Doolittle,* 14 Pick. 126; *Tuckerman* v. *Newhall,* 17 Mass. 583; *Goodnow* v. *Smith,* 18 Pick. 415.)

The release extinguishes the debt. (*McCrea* v. *Purmort,* 16 Wend. 474.)  The reason assigned for the rule is, that as between joint debtors, there is a liability for contribution; and if either pays the debt, he is entitled to demand from his co-obligor his just proportion of it, and this right of contribution would be defeated by the release.  Hence it is held that if a creditor release one of the joint obligors he releases the whole, and extinguishes the obligation.  But this principle has no application to the release of sureties or guarantors.  The holder of a promissory note may release the endorser or guarantor without impairing the obligations of the maker.  He may maintain a joint or several action against them, and if he releases the maker he releases the sureties; because the *corpus* of the obligation is extinguished, and the debt being cancelled, the sureties are of course discharged.  But the release of the surety does not discharge the principal, for the reason that, as between themselves, it

is the debt or obligation of the principal ; and the surety is not liable to reimburse the principal. The release of the surety, therefore, can in no event prejudice the principal, whose obligation continues, notwithstanding the release. The immediate question for our solution is, to what extent these principles affect the relations between a corporation, its stockholders and creditors. That a release to a corporation discharges the stockholders, there can be no doubt, whether the corporation and the stockholders be treated as joint, or joint and several debtors, or, as between themselves, the corporation as the principal debtor, and the stockholders as sureties. Whilst both are primarily liable to creditors, and may be held jointly and severally for the debt, in the same manner that the maker and endorser of a promissory note may be made responsible to the creditor in one or separate actions, nevertheless, *as between themselves*, the corporation is the principal and the stockholder only the surety. If the stockholder, out of his private estate, be compelled to pay a debt of the corporation, there can be no doubt that he can resort to the property of the corporation for his indemnity. As between the corporation and its stockholders, the corporate property is the fund primarily liable for the corporate debts ; and if a stockholder pays the debt, he can hold the corporate property for it. If it were otherwise, and a corporation, owning a large amount of property, should become insolvent, its debts might be collected from the stockholders, who would be without a remedy against the corporate property, which is the fund especially set apart by the corporators to meet the corporate liabilities. This would be a perversion of the theory on which corporations are founded, and would transpose the true relation between the stockholders and the corporation. In the case supposed, it would result in exonerating the corporate property from its just burdens, at the expense of the stockholders, who could not reach the property except by the tardy and expensive process of winding up the corporation.

I conclude, therefore, that as between themselves, the corporation is the principal debtor, and the stockholders are but sureties or guarantors ; and though both are primarily

liable to creditors, in the same manner that the maker and endorser of a promissory note are primarily liable, yet, as between themselves, the corporation being the principal debtor and the stockholders only its sureties, a release of the corporation will release the stockholders; but a release of the latter will not discharge the former, for precisely the same reason that a release of the endorser does not discharge the maker of a promissory note. If the corporation pays the debt out of the corporate property, it cannot call upon the stockholders for contribution; but if a stockholder pays the debt, he can demand more than contribution from the corporation, and can resort to the corporate property for a full indemnity.

It results from this view of the law, that a release to a stockholder of his individual liability for his proportion of a debt due to a particular creditor does not *pro tanto* discharge the corporation, and hence, the release from McClelland and Atkinson to the defendant, in my opinion, did not extinguish any portion of the indebtedness of the corporation; and, therefore, the defendant was not entitled to any deduction from the amount due from him to the plaintiff. The releases were not relevant or competent evidence, as they proved nothing material to the defense. I express no opinion on the point whether a release of one or more stockholders from their individual liability, releases *pro tanto* the other stockholders from their liability, as such. But, for the reasons above stated, I dissent from the opinion of a majority of the Court.