## ELDRIDGE WHITE *et al.*

*v.*

## EDWARD M. FISHER *et al.*

1. MORTGAGE—*priority of payment of series of notes—lost by re-issue.* Where the mortgagor paid to the payees of a series of promissory notes given by the firm of which he was a member, those which had matured, with money which his brother had assisted him to raise by the loan of certain other notes under an agreement with the brother, unknown to the payees, that the brother was to have the notes when taken up assigned to him as a security for the notes he had parted with, and the payees, at the request of the mortgagor, indorsed in blank the notes so paid them without any knowledge that they were to be re-issued by the mortgagor, and they were transferred to the brother as agreed: *Held,* on bill by the payees to foreclose the mortgage as to the remaining notes of the series, falling due in one and two years after those which had been taken up and re-issued, that the latter were not entitled to priority, but were postponed.

2. SAME—*notes re-issued after payment.* Where one of the makers of a series of notes maturing in one, two, and three years, secured by his mortgage, paid the first of the series after due, taking a blank indorsement of them, and then transferred them to a brother, who furnished the means with which they were paid, the payees not knowing that their indorsement was procured for such purpose: *Held,* that the brother, as the holder of such notes, was entitled to the benefit of the mortgage security as against the mortgagor, but as to the holders of the remaining notes his rights were postponed.

3. PAYMENT—*indorsing note on payment.* Where the makers of a series of notes procured from a third party the means with which to pay the notes then due, under an agreement that the same, when paid, should be transferred to such third party, and the payees on payment, at the request of the makers, indorsed such notes in blank and surrendered them to the makers, by whom they were delivered to the third party, the payees not knowing that they were to be re-issued: *Held,* that so far as the payees were concerned, this was not a transfer of the notes, but simply a payment.

4. In such a case the transaction could not be treated as a purchase by the makers for the third party, except on satisfactory proof that the fullest explanation was made to the holders of the notes, and that they understood it to be a sale to some third party.

APPEAL from the Circuit Court of Bureau County.

The opinion states the facts of the case.

Messrs. FARWELL & WARREN, for the appellants.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In this case the appellants held certain notes, executed by the firm of Fisher, Brother & Co., maturing in one, two, and three years from date, each appellant holding different notes, but all secured by one mortgage, which was given by Edward M. Fisher, the senior member of the firm. When the notes, due at the end of the first year matured, they were taken up by Edward M. Fisher, and at his request the payees, when they surrendered the notes, placed their names on the back. Shortly prior to this time, J. M. Fisher had assisted the firm of Fisher, Bros. & Co., of which he was not a member, in procuring a loan, by allowing them the use of certain notes belonging to him, under an agreement that a part of the money thus raised, was to be used in saving the credit of the firm by taking up these notes ; but the notes, when taken up, were to be assigned to J. M. Fisher, to be held by him as a security, in place of those which he had allowed the firm to pledge. Soon after the notes were taken up the firm failed in business. After the notes maturing at the end of two and three years had become due, the appellants filed their bill to foreclose the mortgage, making J. M. Fisher a party, to whom, with one Tetner, the firm of Fisher, Bro. & Co. had made an assignment of all their property. J. M. Fisher answered, claiming to own in his own right the notes maturing at the end of the first year, and alleging that they had not been paid by Edward M. Fisher, but merely bought for respondent's benefit, and that they were still held by him, and entitled to a priority of payment out of the proceeds of the mortgage. The circuit court so held, and this is the question presented by this record.

We have no brief from appellee, but after a careful examination of the evidence, we are of opinion that the appellants, when they indorsed these notes, did so without any idea that

260      WHITE *et al. v.* FISHER *et al.*     [Sept. T.,

Opinion of the Court.

they were making an assignment of them to any person. They supposed the notes were paid, and placed their names upon them, merely because they were requested to do so by E. M. Fisher, and without any reason to suppose he was intending to issue the notes again with their indorsement. Adam Fisher, one of the defendants, and a member of the firm, was called by defendants as a witness, and he testified he was present when several of these notes were presented by the payees for payment, and E. M. Fisher told them that J. M. Fisher furnished the money "to pay the notes," and we observe all through his testimony, that when left to narrate the transaction in his own way, he speaks of it as a payment.

Although the legal effect of an assignment of negotiable paper can not be impaired by parol proof of a different verbal agreement, it is always proper to show the time of the indorsement, and the circumstances under which it was made. These facts enable the court to judge of the intent of the parties interested, and of the real meaning of the indorsement. In the present case the payees presented their overdue notes to the makers for payment, and received the money. They were undoubtedly told that J. M. Fisher had aided the firm in raising the money, or that he had furnished the money, as James Fisher testifies, but even that information would only confirm the impression that E. M. Fisher was *paying* the notes; for if the firm had borrowed the money either directly from J. M. Fisher, or by the aid of his indorsement, still, when borrowed, it became the money of the firm, and one of the partners was using it in discharge of the firm's indebtedness. When asked to place their names upon the notes, they did so unhesitatingly, having, as they testify, entire confidence in E. M. Fisher, and, probably thinking the indorsement of no consequence, or perhaps intended as a receipt, the notes being paid. The testimony shows that these persons were unfamiliar with business of this character, one of them indorsing by his mark. The assignment written over their names was without recourse, but if it had not been, it surely would not be claimed that an

Opinion of the Court.   Syllabus.

assignment could have been written over their signatures, which would have imposed on them any kind or degree of responsibility.

To speak of the maker of a note purchasing it after maturity, by paying the holder the amount due would be a solecism. E. M. Fisher could make no purchase of the notes for himself or for the firm that would be any thing in substance but a payment; and, admitting that he could have bought them for his brother, we will not treat the transaction as such a purchase, except on satisfactory proof that the fullest explanation was made to the holders of the notes, and that they perfectly understood that they were not receiving payment of their past due debts, but simply selling them to the maker for the benefit of some third person. Such a transaction is so at variance with ordinary usage as to need clear proof, that the parties receiving the money understood it in that light.

As the notes, after being taken up were re-issued to J. M. Fisher by the makers, as against them he would be entitled to participate in the proceeds of the mortgage, but the notes in his hands must be postponed to those falling due at the end of the second and third years.

*Decree reversed.*