## FREDERICK B. SUPPIGER ET AL.
## v.
## GERHARD W. GARRELS ET AL.

| 20 | 625 |
|----|------|
| 95 | ¹240 |

| 20 | 625 |
|------|------|
| 199s | ²106 |

1. SUBROGATION—STRANGER OR VOLUNTEER.—A mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor.

2. WHO IS STRANGER OR VOLUNTEER.—A stranger, within the meaning of this rule, is not necessarily one who has had nothing to do with the transaction out of which the debt grew. Any one who is under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer.

3. SUBROGATION IN EQUITY.—Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to cases of insurance.

4. NOT ENTITLED TO BE SUBROGATED.—Upon the facts in this case, the court is of opinion that R. & Co. were under no obligation to pay the note in question, but were mere volunteers, but if they were under such obligation, the same obligation would exist as regards the notes held by appellees, and therefore in neither case would they be entitled to be subrogated to appellees' rights.

APPEAL from the Circuit Court of Jefferson county; the Hon. C. C. BOGGS, Judge, presiding. Opinion filed January 8, 1887.

Previous to September 25, 1870, there had been a correspondence between F. Ryhiner & Co., of Highland, Illinois, and Gruner, Haller & Co., of Berne, Switzerland, on the subject of loaning money of capitalists residing in Switzerland, in this State. Of that date the former addressed to the latter a lengthy communication in the nature of a proposition to become their agents to negotiate such loans. In giving the detail of how the loans should be secured, they say "*the note will be made directly to the creditor interested or to your name or ours.* Whenever the note passes into other hands it will be desirable to have this evidenced by an indorsement, although

under our laws the bearer of such a note will be considered the rightful owner." Referring to the fact that in determining the value, title, etc., of lands taken as security, they will be allowed under our laws to be their own judges. They say: "*Herein, however, lies principally our responsibility toward the creditors.*" The communication closes by stating, "The result of our conversation can be briefly stated thus." Then follows a summing up of the proposition under heads or articles numbered from one to seven. The second is as follows: "Ryhiner & Co. obligate themselves to loan such capital upon first mortgages and prior or superior liens to the rights of wives, children or other creditors of the debtor, on real estate in the State of Illinois. The value of the security (without the separate valuation of the buildings on farm lands) shall at least represent double the amount loaned thereon. The legal interest, ten per cent. per annum, shall be stipulated in favor of the creditor. No such loan shall be made for less than three, nor for more than six years. However, for the purpose of rendering easier partial payments, the notes, with the consent of the creditors, can be drawn to mature at different times within the above limit of three to six years. The amount on the separate eventual wished partial obligations or notes shall be determined on the instruction of Gruner, Haller & Co.; but the same shall, if possible, be not less than $200 for each separate note. Ryhiner & Co. are responsible for the duties incumbent on each official, especially for the strict observance of the just above recited principal rule concerning mortgage loans; for the observance of all legal directions in regard to making title and the returning thereof in the public books, and for all legal precautions which might be necessary for the protection of the rights of creditors." The other articles, under the proofs, have no bearing upon the case. This communication was published in Switzerland by the two firms in the form of a circular letter to their customers. Under this arrangement business was carried on by the two firms for many years, and large sums of money loaned in various counties of this State. On the 17th day of January, 1880, Ryhiner & Co. loaned $700 to Hardin, Barker and wife, and took

their three notes for two, two and three hundred dollars, due in three, five and seven years, secured by deed of trust to A. F. Baudelier as trustee, with George W. Cone as successor, etc. These notes were each indorsed by Ryhiner & Co., as follows—"For value received we assign the within note to Messrs. Gruner, Haller & Co., Berne, Switzerland, or order, limiting our warranty, and liability as indorsers, to the points specially set forth in article two of general conditions as contained in the circular issued by Messrs. Gruner, Haller & Co., of Berne, in November, 1870. Highland, Illinois, 24th February, 1880. F. Ryhiner & Co."—and forwarded to Gruner, Haller & Co. The first note was by them assigned to Mrs. G. Imer, and the other two to parties who afterward assigned them to the complainant Garrels. The first note was designated by the number 1877, and July 19, 1883. Ryhiner & Co., in a letter to Gruner, Haller & Co., wrote: "Further, Hardin-Barker N., 1877, $200 paid, with interest until 17th inst." Thereupon Gruner, Haller & Co. paid Mrs. Imer, took up the note and forwarded it to Ryhiner & Co., at the same time charging them with the amount. The installments of interest on the other notes falling due July 17, 1884, and January 17, 1885, were paid by Gruner, Haller & Co. to the then holders of the notes, and the amount charged to the account of Ryhiner & Co. Shortly prior to the assignment of Ryhiner & Co. the two firms had a settlement, and it was agreed, all interest on the loans due and unpaid to March 1, 1885, should go to Ryhiner & Co., and that accruing after that date, to Gruner, Haller & Co. Nothing was paid on the loan by Barker. About April 30, 1885, Ryhiner & Co. made an assignment to appellants. The first of the Barker notes came to their hands, but without assignment to Ryhiner & Co., December 1, 1885. Appellees, Garrels & Cone, filed their bill to foreclose the deed of trust on the two notes held by Garrels, making appellants parties, and alleging that their interest is subject to the rights of complainant Garrels. Appellants answer, setting up that they are the legal owners of the first $200 note, and as such entitled to a prior lien. They also filed a cross-bill, alleging that said $200 note being due, and Barker failing to pay it, Ryhiner &

Co. made payment thereof to Mrs. Imer, and that she transferred it to them by delivery, whereby they became the legal holders of the same and entitled to all the rights and interests of the said Mrs. Imer in said note and deed of trust. They also set up in this cross-bill that they paid the installments of interest above mentioned, and claim that they should be subrogated to the rights of the then holders of said notes, and they pray that they may be placed upon the same footing as complainant Garrels, in the original bill, sharing *pro rata* with him in case the property does not sell for enough to pay both in full. Garrels and Cone answered this cross-bill, denying that appellants became the legal owners of the notes and interest mentioned therein, or that they are, as against them, entitled to be subrogated to the rights of Mrs. Imer or the holders of the other notes on which the interest was paid. Barker and wife made default, both on the original and cross-bill. The court below decreed a foreclosure in favor of complainants in the original bill, and found for them in the cross-bill; also decreed in favor of appellants on the cross-bill as against Barker and wife, but postpones them as to Garrels; and this last ruling is the only question here presented for decision.

Messrs. KROME & HADLEY, for appellants; as to subrogation, cited Lochenmeyer et al. v. Fogarty, 112 Ill. 572; Beaver v. Slanker, 94 Ill. 175; Hough v. Ætna Life Ins. Co., 57 Ill. 318.

Mr. W. C. KUEFFNER and Mr. C. H. BURTON, for appellees; that a mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor, cited Hough v. Ætna Life Ins. Co., 57 Ill. 318; Beaver v. Slanker, 94 Ill. 175; Young v. Morgan, 89 Ill. 203; Sheldon on Subrogation, § 11; Bishop v. O'Conner, 69 Ill. 431; Wolff v. Walter, 56 Me. 292.

WILKIN, P. J. Appellants base their claim to share equally

with appellee Garrels, upon the doctrine of subrogation.   Unless appellants have shown that Ryhiner & Co. were in some way liable to pay the note and interest in question, that doctrine has no application.   A mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor.   Hough v. The Ætna Life Ins. Co., 57 Ill. 318; Young v. Morgan, 89 Ill. 203; Beaver v. Slanker, 94 Ill. 175.   A stranger within the meaning of this rule is not necessarily one who has had nothing to do with the transaction out of which the debt grew.   Any one being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer.   In Bishop et al. v. O'Connor et al., 69 Ill. 431, the Supreme Court say the doctrine of subrogation in equity is confined to the relation of principal and surety and guarantors, and to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and to cases of insurance.   Sheldon on Subrogation, Sec. 11.   What relation, then, did Ryhiner & Co. bear to the notes at the time they claim to have made the payments?   In view of the correspondence between them and Gruner, Haller & Co. it can not be said that they became liable as indorsers, even if they had not qualified their liability by the indorsement.   The assignment was for the sole purpose of transferring the legal title to the parties to whom the notes belonged, and the ordinary relation of indorser and indorsee did not therefore exist.   The indorsement, however, did specifically provide that no liability beyond that arising under article two should be created by it.   The liability of Ryhiner & Co., therefore, if any existed, grew out of their agency and not because of their indorsement.   If liable under their contract of agency, that liability must have resulted from their failure or neglect to perform their contract of agency, of which there is no proof or pretense.   Therefore Ryhiner & Co. were under no legal obligation whatever to pay the note to Mrs. Imer, or the interest on the other notes.   But it is said that Barker alone can raise this question.   When it is considered that the attempt here is, to affect the rights of appellees by depriving

them of a part of the security out of which they may make their debt and thereby compel them to take only a *pro rata* part thereof, it is impossible, from principle or authority, to sustain such a position. White et al. v. F sher et al., 62 Ill. 258. Again, the doctrine invoked by appellants rests in equity, and can only be applied with a due regard to the legal and equitable rights of others. Could there be any legal, equitable or moral obligation resting upon Ryhiner & Co. to pay the Imer note, or the installments of interest, which does not also exist as to the notes held by appellee Garrels? How can it be said that they were obligated, either as agents or indorsers, to pay the first note, but not the other two, all growing out of precisely the same transaction and transferred by the same indorsements? There can be but one answer to these questions. Whatever duty they owed to the assignee of the first note, they also owed to the assignees of the second and third. Whatever justifiable motive may have prompted them, even outside of a legal obligation to pay the one, ought, in equity and good conscience, to prompt them to pay the others. Therefore the decree giving the holder of the second and third notes a preference is equitable and just as between him and Ryhiner & Co. or their assignees. Appellants are in a dilemma. If they say Ryhiner & Co. were under no obligation to pay Mrs. Imer, not being in the position of purchasers or assignees, they place themselves in the attitude of volunteers, and for that reason have no standing as against appellee. If they say Ryhiner & Co. were under obligation to pay that note they thereby admit the same obligation to appellee and must fail. In any view of the case it is clear that the decree of the circuit court is right.

Affirmed.